(No. 84-CC-0611– )

R. W. DUNTEMAN COMPANY, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed March 10, 1995.*

*Order filed December 5, 1995.*

*Order filed November 27, 1996.*

JAMES A. REIMAN & ASSOCIATES, for Claimant.

JIM RYAN, Attorney General (RICHARD KRAKOWSKI, Assistant Attorney General, of counsel), for Respondent.

## OPINION

Mitchell, J.

Claimant, R. W. Dunteman Company, hereinafter referred to as "Dunteman" filed a breach of contract action against the State of Illinois, Department of Transportation, hereinafter referred to as "IDOT," pursuant to section 8(b) of the Court of Claims Act. (705 ILCS 505/8(b).) Dunteman contends that IDOT breached its construction contract and Dunteman is seeking damages in the amount of $25,250 plus interest in accordance with the State Prompt Payment Act. 30 ILCS 540/1 *et seq.*

### Facts

R. W. Dunteman Company is an earth moving and paving firm. On January 25, 1982, IDOT awarded Dunteman a construction contract to perform construction work at Du Page County Airport for the sum of $137,355. The contract described the work as follows:

"Construct, light and mark extension to the parallel taxiway to runway 10/28 and a single row auto parking area."

The contract required that IDOT authorize all change orders in writing as per the correspondence from IDOT to Dunteman dated January 25, 1982, which states in pertinent part as follows:

"NO WORK SHALL COMMENCE UNTIL THE NOTICE TO PROCEED HAS BEEN ISSUED BY THE DIVISION OF AERONAUTICS. Any work started before this issuance may become ineligible for payment under this contract."

On April 22, 1982, a preconstruction meeting was held. The memorandum of the preconstruction conference indicates that among others present at the conference were: Larry Frank, the construction engineer from

the Division of Aeronautics of IDOT; Steve Moulton, of Crawford, Murphy & Tilly, Inc. ("CMT"); the consulting engineers and agents for IDOT; Jeff Plapp, the resident engineer for CMT; and Allen Dunteman on behalf of Dunteman. The minutes of the preconstruction conference indicate "as per Mr. Frank, only the Division of Aeronautics can approve the contract changes."

Mr. Dunteman testified that based on his experience, change orders are required to increase or decrease the scope of work specified in the contract. He further testified that it was Dunteman's practice to act on change orders as soon as they were approved by IDOT and received by Dunteman.

On April 26, 1982, construction work began. On April 30, 1982, Dunteman discovered an inferior subsoil problem. Jeff Plapp, resident engineer, directed Dunteman to excavate 2,500 cubic yards of ground. This work took two working days. A disking process was done to attempt to dry the soil due to excessive rain in May 1982. This process took three weeks to complete. By the end of May 1982 the subgrade was fairly well constructed.

In late May, it became apparent that the soil was unacceptable for asphalt. This condition was brought to the attention of Plapp who stopped the project and said he needed to contact Larry Frank, the construction engineer from IDOT. On June 9, 1982, CMT wrote a letter to Dunteman stating that the work could not proceed until Larry Frank visited the job site. On June 11, 1982, Frank visited the job site and approved a method of repair which would change the terms of the contract.

Frank testified that on June 11, 1982, he orally advised Dunteman to proceed with the work without any signed change order documents.

On June 14, 1982, CMT wrote Dunteman a letter regarding the June 11, 1982 meeting. No change orders were executed at that time. The June 14, 1982 letter indicates that additional amounts of stone could be used to firm the subsoil. In the letter, CMT requested that Dunteman provide it with a price for the stone. The letter further noted items of work which had not been completed by the contractor.

On June 17, 1982, Dunteman wrote CMT a letter indicating the price of the stone. In addition, Dunteman stated, in pertinent part:

"If our 'agreed' unit price is acceptable to you and the Illinois Department of Transportation, please issue your written Change Authorization so that this work may proceed without delay."

On June 18, 1982, Moulton, the project engineer, responded to Claimant's letter with a Change Order No. 1 for signature. The letter noted Dunteman's concern over receiving written authorization to proceed with the work and also expressed disappointment at the lack of progress on the uncompleted items listed in CMT's letter of June 4, 1982, which were unrelated to the subgrade problem.

On June 19, 1982, Dunteman submitted to IDOT Change Order No. 1 which took into account the additional cost of $6,157.60 for the crushed stone. On June 23, 1982, Dunteman submitted Change Order No. 2 to be signed by IDOT. This change order added 60 calendar days to the project. Executed copies of Change Order Nos. 1 and 2 were not received by Dunteman for approximately one month, until July 23 or July 24, 1982. The project was shut down from approximately May 1, 1982, when the subsoil problems were discovered, until July 23 or 24, 1982, when Dunteman received IDOT's written change order. During this shutdown, Dunteman was charged 44 calendar days, which constitutes the $15,200 in liquidated damages charged Dunteman.

Larry Frank, the construction engineer for IDOT, testified that no change orders were executed by IDOT between June 23, 1982, and July 15, 1982.

The fully executed change orders indicate that Roger Barcus, Chief of the division of aeronautic of IDOT, did not sign off on them until July 16, 1982. Upon receipt of the change orders, Dunteman completed the work expeditiously.

Claimant further alleges that while they awaited IDOT's execution of change orders, Claimant incurred mobilization costs for moving the equipment off the project while the project was shut down. Claimant contends that the mobilization costs incurred total $3,657.55.

IDOT made a charge for a 38 calendar day delay totaling $15,200 in liquidated damages. Claimant seeks recovery of the $15,200 charged. In addition, Claimant seeks payment in the amount of $6,360 for additional handling of materials and $3,657.55 for mobilization costs incurred in moving the equipment off the project during the construction delay. Claimant seeks total damages in the amount of $25,250.

I. Whether IDOT properly charged claimant for liquidated damages for delays in completing work

The issue before the Court is whether IDOT properly charged Claimant with $15,200 in liquidated damages for a 38 day delay in project completion where IDOT failed to execute change orders for the completion of the work.

In late May 1982, the project was shut down pursuant to the order of Jeff Plapp, resident engineer. On June 11, 1982, IDOT's construction engineer visited the job site and orally approved a method of repair which would change the terms of the contract. However, the

change orders were not executed by IDOT until July 16, 1982.

Respondent contends that the verbal directions of the construction engineer on June 11, 1982, and the letters from IDOT to Claimant on June 11, 14, and 18, 1982 were sufficient directions to Claimant and that a written change order was not necessary for completion of the work.

We disagree. At the preconstruction conference on April 22, 1982, the IDOT's construction engineer warned Claimant that written change orders must be issued to effect a change. On January 25, 1982, IDOT issued a letter to Claimant which, in pertinent part, states as follows:

"NO WORK SHALL COMMENCE UNTIL THE NOTICE TO PROCEED HAS BEEN ISSUED BY THE DIVISION OF AERONAUTICS. ANY WORK STARTED BEFORE THIS ISSUANCE MAY BECOME INELIGIBLE FOR PAYMENT UNDER THIS CONTRACT."

Mr. Dunteman testified that in his experience and prior dealings with the State, work proceeded only when executed change orders were received. In addition, Claimant specifically requested a written change order on June 17, 1982, but IDOT failed to produce the document until July 23, 1982.

There is no question that the project was halted by the resident engineer. Respondent's contention that the oral instructions issued by IDOT's construction engineer on June 11, 1982 were sufficient to recommence construction is entirely unreasonable. First, the contract, the discussion at the preconstruction meeting, clearly dictate that proper procedure includes written change orders prior to commencement of work.

Claimant's reliance on IDOT's oral instructions on June 11, 1982, would have been entirely unreasonable in light of the foregoing. In addition, IDOT's letter of June 14, 1982, evidences the fact that the parties had not yet

reached an agreement as to terms in regard to costs or materials. If Claimant had relied on IDOT's oral instructions, their actions would have been contrary to the contract, the express mandates of IDOT, in addition to custom and practice.

Claimant's actions were entirely reasonable and justified under the circumstances. Respondent improperly charged Claimant with liquidated damages in the amount of $15,200.

## II. Whether IDOT properly refused to pay for the additional handling of material

Claimant contends that due to additional work not originally contemplated in the contract, Claimant was forced to handle materials several times, therefore incurring additional expense of $6,360. Claimant seeks reimbursement for expenses incurred.

We disagree. Pursuant to special provisions to the contract identified as specification 152—3.2 and 152—4.1 and the testimony of Jeff Plapp, CMT resident engineer, and Steve Moulton, civil engineer, the contract specifically states that the contractor would be paid for the handling of materials only once. Pursuant to the terms of the specifications, the contractor would not be paid for handling the materials a second time. Jeff Plapp testified that he specifically advised Claimant's foreman to minimize his handling of the materials because if he handled them twice he would only be paid for handling them once. The conversation between the parties was evidenced by an entry in Plapp's diary of job site activities.

The Claimant's request for an award for additional expenses in the amount of $6,360 for additional handling of materials is without basis and appears to be specifically precluded by the terms of the contract.

Therefore, IDOT properly refused payment for additional handling of materials and an award to Claimant must be denied.

### III. Whether IDOT properly refused to pay mobilization costs.

Due to the Respondent's delay in executing and issuing change orders, Claimant incurred "mobilization" costs for moving their equipment off the project. Mr. Dunteman testified that the costs were reasonable and necessary and totaled $3,657.55. IDOT's agent, civil engineer Steve Moulton, agreed that it is customary to charge for the movement of machinery where delays are not caused by the contractor. The Respondent did not address this issue in argument. In this case, the delay was caused solely by the inaction of the Respondent. It was entirely reasonable and customary for the contractor to move equipment not being used during the term of the delay. Neither the record nor argument advance any testimony or evidence that the costs incurred in moving the equipment were unreasonable.

An award for mobilization costs should be made in favor of Claimant in the amount of $3,657.55.

### Conclusion

Claimant is denied an award for additional handling of materials.

However, an amount totaling $18,857.55, representing $15,200 for charges of improperly assessed liquidated damages and $3,657.55 for mobilization of equipment due to delays by Respondent, shall be granted.

Finally, as is often the case, the question of entering an award remains before the Court. This Court cannot enter an award unless sufficient funds remained unexpended

in the appropriation made to fund the project. (*Lowenburg/Fitch Partnership v. State* (1986), 38 Ill. Ct. Cl. 277; *Ude, Inc. v. State* (1982), 35 Ill. Ct. Cl. 384.) There is no evidence before the Court from which the Court can determine if appropriated funds remained from which to make an award. Therefore, before entering an award for the Claimant or making a recommendation to the General Assembly, we need additional information. Respondent is ordered to file the fiscal data on this project, including the balance of funds which lapsed at the conclusion of this project and a list of any other claims against that money so that the Court can determine what amount of award can be made, if any. Respondent shall file this information with the Clerk of Court within 21 days.

## ORDER

MITCHELL, J.

This cause comes on to be heard following the Respondent's response to our opinion filed March 10, 1995, due notice having been given, and the Court being advised, finds:

In the March 10, 1995, opinion we found the Claimant suffered damages in the amount of $18,857.55 but did not enter the award due to the lack of fiscal information in the record. We then ordered the Respondent to provide that information within 21 days. The purpose for the deadline was to enable us to assess the information, enter another order, and present the matter to the General Assembly prior to its adjournment so that the Claimant would not have to wait an additional year to be paid.

On April 7, 1995, the Respondent requested a 30-day extension on the deadline. Had the Respondent complied with the order within that 30 days the Court would

still have had sufficient time to act on the matter. Instead, on May 5, 1995, the Respondent requested an additional 30 days. Respondent's information was not forthcoming within that period either and Claimant understandably felt the necessity to file a motion to compel. By the end of May the urgency became moot with the adjournment of the General Assembly.

To provide for payment of awards in claims of this nature the Court annually presents its decisions to the General Assembly for its consideration of appropriating funds. Proper and detailed fiscal information is needed to enable the Court to so advise the General Assembly, *e.g.* payment should be made from the appropriate source.

The information provided us in the Respondent's untimely response is utterly useless. The response states $2,073.02 in State services "B" bonds remain which had been appropriated and $18,642.76 in Du Page County airport authority funds exist. As for the bond money, no appropriation account code numbers were provided, no explanation of where the money is was provided, and nothing was provided to indicate whether the appropriation lapsed or was rolled over. As for the airport authority funds the Respondent did not inform us as to where that money is, how the fund operates, or even if it could be used to pay the award. In addition there was no breakdown as to how the contract was to have been funded percentage wise with respect to the two sources of money nor was there any indication of whether or not other claims to that money have been made.

Counsel for IDOT in a letter attached to the Respondent's response indicated he was "not exactly clear whether the court can order (IDOT) to expend the Du Page County Airport Authority Funds." That is not the question. IDOT has been assessed damages. No request

for reconsideration of the decision was filed. The decision is final. The question is whether IDOT can use the funds to pay the damages not whether the Court can order it.

If IDOT has access to either the bond money or the airport authority money and can expend it then it should do so as soon as is practical and report back to us. If IDOT cannot somehow manage to use the money to pay this claim we request that a more complete financial picture be presented sufficiently in advance of the next legislation session to enable us to present this claim.

## ORDER

MITCHELL, J.

This cause coming on to be heard on the Claimant's motion for entry of an award. On March 10, 1995, the Court entered an order in favor of the Claimant, R. W. Dunteman Company, in the amount of $18,657.55. However, the Court noted that it could not enter an award unless sufficient funds remained unexpended in the appropriate made to fund the project. Based upon the information provided by the Respondent, the Court now believes there are sufficient funds in which to pay the amounts found due in the March 10, 1995 order. Therefore, the Court enters an award of $18,657.55 to the Claimant, R. W. Dunteman Company. Furthermore, the Court holds that the Claimant did not provide sufficient evidence to justify the awarding of attorney's fees and costs and the Court denies attorney's fees and costs to the Claimant.

IDOT will pay the award.